# EXHIBIT 1

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Trisha Tshudy | : |
| | : |
| *Plaintiff* | :   Civil Action No. 22-cv-03336 |
| | : |
| v. | : |
| | :   Hon. Wendy Beetlestone |
| Pennsylvania State University | : |
| | : |
| *Defendant* | : |
| | : |

**<u>DECLARATION OF DANIELLE M. CONWAY</u>**

Danielle M. Conway, of full age, hereby declares as follows:

1.      I am the Dean and Donald J. Farage Professor of Law at Penn State Dickinson Law ("Dickinson Law").

2.      I make this Declaration on the basis of personal knowledge and my review of materials kept by Dickinson Law in the regular and ordinary course of business.

3.      As a result of my position as Dean of Dickinson Law and involvement in some of the events at issue, I have knowledge of and am familiar with the events that give rise to the Complaint filed by Plaintiff, Trisha Tshudy ("Ms. Tshudy").

4.      On December 18, 2019, Ms. Tshudy was offered admission to Dickinson Law and awarded a full-tuition scholarship. <u>See</u> 12/18/2019 Email (**Exhibit "A"**).

5.      Ms. Tshudy's offer letter indicated that her scholarship "will be renewed automatically in [her] second and third years so long as [she remains] in good standing under the honor code and academic rules. <u>Id.</u>

6.      At all times material hereto, Dickinson Law had in place an Honor Code that set forth ethical rules, principles, and standards of academic integrity for its students in order to

"safeguard and promote the ideals of honor and integrity by prohibiting lying, cheating, stealing, and other dishonorable conduct of an academic nature." <u>See</u> https://dickinsonlaw.psu.edu/honor-code#7.1

      7.     The Dickinson Law Honor Code also sets forth the procedure for adjudicating alleged substantive violations of the Honor Code and other Pennsylvania State University (PSU) academic rules, including, but not limited to, instances of suspected plagiarism. <u>Id.</u>

      8.     Dickinson Law's Honor Code defines "plagiarism" as follows:

> Should be given its usual dictionary meanings: to steal and pass off (the ideas or words of another) as one's own; to use (a created production) without crediting the source or to commit literary theft, presenting as new and original an idea or product derived from an existing source. Plagiarism includes the copying or paraphrasing without acknowledgment of any material written or expressed by another person, and the submission of work written in whole or in substantial part by someone other than the student who submits the work as the student's own work. Plagiarism also includes the re-submission of work originally completed for another course and the giving or receiving of excessive assistance or making excessive use of the work of someone else in preparing an assignment, without faculty approval. What constitutes "excessive assistance" or "making excessive use of the work of someone else" is a matter for the course professor to decide and communicate in a timely manner to the students. Unless the course professor gives different instructions, "excessive assistance" should be construed with reference to the academic purpose of the assignment - to develop the student's research and writing skills and to evaluate his or her skills. A student may receive some counsel and suggestions from other people, e.g., another student, the course professor, so long as the paper is, in both pedagogical and literary senses, the work of the student.

<u>Id.</u> at Article 1.1(L).

      9.     Ms. Tshudy enrolled in Dickinson Law as a first-year law student in the fall of 2020.

10.     In or about December 2021, Adjunct Professor, James M. Gould, alerted the administration of Dickinson Law of an instance of suspected plagiarism by Ms. Tshudy in connection with the final paper she submitted for his Fall 2021 course, *Biotech, Pharmaceuticals and the Law*. More specifically, it appeared that Ms. Tshudy's paper exhibited a high degree of tracking with a Note published by Hannah-Alise Rogers entitled *Trade Secret Rising: Protecting Equivalency Test Research and Development Investments After Momenta v. Amphastar*, 22 J. Intell. Prop. L. (2014) (the "Rogers Note"). See 01/15/2022 Honor Code Hearing Report (**Exhibit "B"**) at p. 1.

11.     It is my understanding that, on or about January 3, 2022, Associate Dean for Administration, Laura H. Williams, and Professor Sabrina Sondhi, informed Ms. Tshudy of the accusation of plagiarism by telephone. I further understand that, thereafter, Dean Williams sent Ms. Tshudy documentation showing the similarities between Ms. Tshudy's paper and the Rogers Note. Id. at p. 1.

12.     It is my further understanding that Ms. Tshudy declined to make a Conscientious Admission[1] and she was then advised that a hearing would be conducted before an Honor Code Hearing Board. Id.

13.     A report was made to the Chair of the Dickinson Law Honor Committee and he determined that probable cause existed for the accusation.  Thereafter, steps were taken to hold an Honor Code Hearing, including assembling a Hearing Board that consisted of three students all of whom, at the time, were members of Dickinson Law's Honor Committee, as well as Dickinson Law faculty members, William E. Butler and Megan Riesmeyer. Id. at pp. 1-2.

---

1 Dickinson Law's Honor Code defines "Conscientious Admission" as: "A student's oral or written admission, presented to the Honor Code Administrator, of a possible Honor Code violation committed by that student." See Honor Code at Article 1.1(E).

14.     The Honor Code Hearing was held on January 14, 2022 and lasted over four and one half hours. During the hearing, the Board questioned Ms. Tshudy extensively, reviewed relevant documents, and heard testimony from both Dean Williams and Professor Gould. Ms. Tshudy attended the hearing with a witness, but ultimately declined to call this witness to testify on her behalf. Id. generally.

15.     Following their post-hearing deliberations, the Honor Code Hearing Board unanimously concluded, on the basis of clear and persuasive evidence, that Ms. Tshudy had violated Article 2.1(F) of Dickinson Law's Honor Code and made the following factual findings:

    (a)    Ms. Tshudy had drawn upon and sometimes copied verbatim the Note published by Rogers in 2014 when preparing her assignment for Professor Gould in violation of the course instructions and of the Honor Code; and

    (b)    Ms. Tshudy was, at least disingenuous, and, at worst dishonest in explaining the similarities between the Rogers Note and her own paper.

Id. at p. 3.

16.     In view of its findings, the Honor Code Hearing Board issued the following sanctions to Ms. Tshudy:

    (a)    A written reprimand to be included in Ms. Tshudy's student record;

    *(b)*    Denial of credit for the course, *Biotech, Pharmaceuticals and the Law* with an appropriate transcript entry;

    (c)    A recommendation that Ms. Tshudy schedule a meeting with Associate Dean Jeffrey Dodge to discuss mental health assistance; and

    (d)    A recommendation that Ms. Tshudy schedule a meeting with Professor Titichia Jackson to receive counseling on academic success.

Id. at p. 4.

17.     Thereafter, Ms. Tshudy exercised her right to appeal the Honor Code Hearing Board's decision to the Dean of Dickinson Law.

18.     In connection with my consideration of Ms. Tshudy's appeal, I reviewed the materials presented during the January 2022 hearing and also viewed a complete video recording of the hearing. See 02/04/2022 Opinion (**Exhibit** "**C**").

19.     Following my review and consideration of these materials, on February 4, 2022, I issued an opinion affirming the decision of the Honor Code Hearing Board. Id.

20.     While I was not required to write an opinion setting forth my decision, I chose to do so as I felt it appropriate to respond to several of the more flagrant assertions made by Ms. Tshudy in her appeal, particularly her allegations of "perjury" by a professor and a "lack of civility and decorum, and absolute negligence…" on the part of the Honor Code Hearing Board. Id. See Tshudy Appeal (**Exhibit "D"**)

21.     In connection with my decision and in line with the sanctions imposed by the Honor Code Hearing Board, on February 16, 2022, I sent an email to Ms. Tshudy, advising her that her scholarship was revoked, as she was no longer in good standing under the Academic Rules and the Honor Code. See 02/16/2022 Email with Attachment (**Exhibit** "**E**").

22.     My email further advised Ms. Tshudy that her scholarship would not be retroactively revoked for her first three semesters (i.e., Fall 2020, Spring 2021, and Fall 2021), but that it was revoked for the Spring 2022 semester and for the 2022-2023 academic year. In addition, my email advised Ms. Tshudy that she had a balance due of $26,688.00, and that she should contact the Admissions and Financial Aid Office should she wish to apply for loans to cover this balance and any tuition owed for subsequent semesters.  Id.

23.     In or around June 2022, I was made aware that Ms. Tshudy contacted the Finance Office and the Admissions and Financial Aid Office, as well as the Bursar's Office at PSU. Ms. Tshudy did not contact these offices to discuss financial aid; rather, I learned that she informed employees in those offices that there was an "administrative error" that resulted in the revocation of her scholarship. See 06/2022 Emails (**Exhibit** "**F**").

24.     Because there was no "administrative error" and because Ms. Tshudy had been advised of the reasons why her scholarship was revoked, I emailed Ms. Tshudy and requested that she "refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship." Id.

25.     Ms. Tshudy responded to my email and advised that she was aware that her scholarship had been revoked mid-semester and she denied informing others that there had been an administrative mistake. Id.

26.     After receiving Ms. Tshudy's email, I listened to a voicemail Ms. Tshudy left for the Office of Admissions and Financial Aid and also reviewed notes from calls Ms. Tshudy made to PSU's Bursar's Office in April and June 2022. Those notes reflected that Ms. Tshudy informed PSU employees that her scholarship had been "removed in error" and that she requested that the funds be posted back to her account. Id.

27.     By way of example, the note for a June 6, 2022 call from Ms. Tshudy states as follows:



28.     On June 7, 2022, I again emailed Ms. Tshudy and advised that I had confirmed that she had contacted PSU's Bursar and Student Financial Services on April 6, 2022 and informed them that her scholarship had been "removed in error." Id. At that time, I again instructed Ms. Tshudy to refrain from communicating to PSU and Dickinson Law employees that there was an administrative mistake regarding the revocation of her scholarship as this was inaccurate. Id.

29.     At no time did I instruct Ms. Tshudy that she was "forbidden to discuss" any information "with any PSU employees" as she alleges in her Complaint. To the contrary, my instruction was that she should not make misstatements about the circumstances under which her scholarship was revoked.

I understand that this Declaration is made subject to the penalties relating to unsworn falsification to authorities, 28 U.S.C. § 1746.

*Danielle M. Conway*

Danielle M. Conway
Dean and Donald J. Farage Professor of Law

Dated:  September 2, 2022

# EXHIBIT A

**From:**          Rogers, Lori M
**To:**            Saidman-Krauss, Bekah Anna
**Cc:**            Rogers, Lori M
**Subject:**       Trisha Tshudy Admission Offer FW: Penn State Dickinson Law
**Date:**          Thursday, February 10, 2022 9:01:48 AM
**Attachments:**   image001.png
                   image002.png

---

**From:** Rogers, Lori M
**Sent:** Wednesday, December 18, 2019 2:25 PM
**To:** TTSHUDY3@GMAIL.COM
**Subject:** Penn State Dickinson Law

December 18, 2019

Dear Trisha,

**You did it!** On behalf of Dean Danielle M. Conway and our entire faculty, I am thrilled to offer you admission to Penn State Dickinson Law's Class of 2023! As a Dickinson Law alumna, I am both delighted and proud to welcome you to our community of innovative thinkers, reputable scholars, and passionate advocates.

In recognition of your accomplishments and in anticipation of the contributions that we hope you will bring to Dickinson Law, I am pleased to offer you a full-tuition scholarship. Your scholarship will be renewed automatically in your second and third years so long as you remain in good standing under the honor code and academic rules.

Because you were admitted to Dickinson Law through our binding Early Decision program, you contractually agreed to enroll at Dickinson Law in the fall semester if admitted. To honor this commitment, your initial deposit of $500 is due no later than January 15, 2020. Additionally, you must withdraw any pending applications to other law schools, and you may not initiate any new applications.

The best way to learn about us—or any law school, for that matter—is to visit in person. Because we believe that you will appreciate the Dickinson Law difference when you arrive on campus, we are happy to provide you with a travel stipend to reduce the cost of your visit. We will be hosting three dedicated admitted student events in the fall semester, but you are welcome to visit us at any time. We are conveniently located about 20 minutes outside of Harrisburg, the state capital, as well as an easy drive or a short train ride from Philadelphia (120 miles), Washington, D.C. (115 miles), Baltimore (90 miles), and New York City (190 miles). Please contact us to schedule your visit.

For 185 years, Dickinson Law graduates have included the nation's most distinguished attorneys, judges, government and corporate leaders, and legal educators. We could not be more excited to invite you to become part of this long and proud history of distinction. We believe that you are an exceptional applicant and will have many offers from which to choose,

but we hope that you will make the decision to join Dickinson Law's Class of 2023! In the meantime, feel free to join the Facebook group for Dickinson Law's Class of 2023 to connect with your future classmates.

To reserve your seat and your scholarship, you will need to pay two nonrefundable $500 deposits, the first of which, as mentioned, is due January 15. Please visit the admitted student section of our website (dickinsonlaw.psu.edu/2023) for more detailed information about academic standing, deposit payments, scholarship retention, travel stipends, and much more. Should you have any additional questions in the coming months or if you would prefer to speak with someone over the phone, do not hesitate to reach out to the admissions office directly at 717-240-5207.


Sincerely,


**Bekah Saidman-Krauss**
Assistant Dean for Admissions & Financial Aid
Penn State Dickinson Law
Lewis Katz Hall
150 South College Street
Carlisle, PA 17013



# EXHIBIT B

## TSHUDY HEARING REPORT

To:     Dean Laura Williams, Honor Code Administrator
From:  Prof. William E. Butler, President of the Hearing Board
Date:   15 January 2022
Re:     Hearing Report for Honor Proceeding against Trisha R. Tshudy

### BACKGROUND

2L student Trisha B. Tshudy was accused of violations of the Honor Code of Penn State Dickinson Law arising under Section 2.1(D) and (F) in connection with the submission of a Research Paper for Adjunct Professor James M. Gould in the course "Biotech, Pharmaceuticals and the Law" (Cert. 997) offered during the Fall 2021 semester.

Ms. Tshudy submitted her final paper for the course two days late, without authorization, on 17 December 2021 to Professor Gould via email. In the course of grading the paper, he became aware of a high degree of tracking between a Note published by Hannah-Alise Rogers, *Trade Secret Rising: Protecting Equivalency Test Research and Development Investments After Momenta v. Amphastar,* 22 J. Intell. Prop. L. 209 (2014) [hereinafter: Rogers Note] and Ms. Tshudy's paper, including cited cases and actual passages that appeared to match the Rogers Note precisely. Professor Gould became concerned about a possible violation of the Honor Code without having undertaken any automatic verification or using any automatic plagiarism checker. He found no reference to the Rogers Note in Ms. Tshudy's paper. Having contacted Associate Dean Jeffrey Dodge about the matter, who directed Professor Gould to alert Dean Williams, on 31 December 2021 Professor Gould notified Dean Williams by email of his concern.

In a phone conversation between Dean Laura Williams, Honor Code Administrator, and Professor Sabrina Sondhi, on one end, and Ms. Tshudy on 3 January 2022 at 16:15 hours, Dean Williams made Ms. Tshudy aware of the report of violation, and asked for Ms. Tshudy's response. Following the call, Dean Williams sent a note to Ms. Tshudy acknowledging the call and sending the text of the Honor Code.

In response, on 4 January 2021 Ms. Tshudy sent Dean Williams an extensive email containing a list of 33 articles and analyses "directly aligned" with the information in her paper that contained "the exact path of organization" as her own paper. This email included a reference to the Rogers law review note. Dean Williams responded by sending a copy of the Tshudy paper with passages highlighted, and the Rogers Note with passages highlighted, to indicate the similarities between the two documents.

On 5 January 2022, Dean Williams and Professor Sondhi spoke again with Ms. Tshudy at 16:15 hours by phone to confirm that Ms. Tshudy did not wish to make a Conscientious Admission and to convey the decision that, in the absence of such Admission, a proceeding would be commenced under Article 5.2(C) of the Honor Code. At 17:49 hours Dean Williams contacted the Chair of the

N.B.



Dickinson Law Honor Committee, ███████████ to report a suspected violation of the Honor Code to consult as to whether in the view of ███████ probably cause exists to believe the Honor Code has been violated.

N.B.                                        N.B.

██████ did consider such probable cause to exist and took steps on 6 January 2022 to set in motion an Honor Code Proceeding. He appointed Professor William Butler to the Hearing Board and designated him to serve as President of the Board. Also appointed to the Hearing Board were Professor Megan Riesmeyer, and ███████████████████████████████ – A.B. M.N. all members of the Honor Committee eligible to serve on a Hearing Board.                            S.R

On 7 January 2022, Dean Williams, in her capacity as Presenter under Article 5.3(D) of the Honor Code, gave written notice to Professor Butler in his capacity as President of the Hearing Board that she intended to call Adjunct Professor James Gould as a witness to be questioned at the Hearing.

Also on 7 January 2022, Dean Williams as Presenter notified all members of the Hearing Board that pursuant to Article 5.4 of the Honor Code she would provide certain documents relative to the Hearing: (1) Report of possible Honor Code violation (Prof. Gould); (2) Tshudy – Research Paper Final – with highlighting (from Prof. Gould); (3) Trade Secrets Rising (Law Review Note); (4) Student's email Response with marked outline). Later that same day Dean Williams supplied the results of the papers being run through plagiarism software to Ms. Tshudy and to members of the Hearing Board.

All of these steps and relevant provisions of the Honor Code were set out in a comprehensive email from Dean Williams to Ms. Tshudy of 7 January 2022, at 11:32 hours. Ms. Tshudy was advised to inform Dean Williams and Professor Butler if she intended to call any witnesses.

On 10 January 2022 Dean Williams as Presenter circulated to the Hearing Board members an additional document: BPL Course Policies – FA2021.

In the evening of 10 January 2022, Ms. Tshudy contacted Dean Williams about how witness testimony on her behalf might be presented, noting that possible witnesses she might call were unable to get off work on such short notice. Dean Williams suggested that Ms. Tshudy contact the President of the Hearing Board about this. Ms. Tshudy wrote to Professor Butler on 13 January 2022 at 12:58 hours requesting that she be informed "what the options are". Professor Butler replied at 13:00:58 saying that she could have witnesses "if you think it is in your interest" and inquired "what first hand evidence can they offer of your writing the paper". Ms. Tshudy responded at 15:13 hours and said she had a "multitude of witnesses regarding various aspects of my testimony", only one could get off work, and would there be an opportunity to "submit additional witness statements" if aspects of her testimony need clarification or verification. Professor Butler replied at 20:41:06 hours that he needed details of any witness who was coming to the Hearing tomorrow and would leave the question of witness statements after her testimony had been heard. Ms. Tshudy asked in an email of 22:12 hours what "info" was needed, and was told "name, position, and relevance to the matter" in a reply of 22:13:21 hours.

On 14 January 2022, at 00:18 hours Ms. Tshudy asked Mr. T███ M██████ appear on her behalf as a witness to the "assignment, my frustrations with the inconclusive plagiarism policy and citations …".

## THE HEARING

On Friday, 14 January 2022, at 13:00 hours the Hearing Board convened in Room 106 (Hearing Room) of the Law School to consider the allegations against Trisha R. Tshudy and her defense. Present at the Hearing were: Ms. Tshudy, Dean Williams, witness Professor James Gould, ██████ N.B. ██████, witness ██████████████ and the Hearing Board members, enumerated above.

T.M.



In accordance with Section 5.5(E) of the Honor Code, the proceedings were recorded. The witnesses were present throughout the proceedings.

During the proceedings, Professor Gould was invited by Dean Williams, as Presenter, to set out his understanding of what had transpired, his reaction when grading Ms. Tshudy's paper, the actions he took to notify the Law School of a suspected violation, and his views on the gravity of the violation. Members of the Board and the accused put questions to him.

Ms Tshudy the spoke at considerable length about her preparation of the assignment, personal difficulties experienced during the semester, including health and bereavements, and responded to questions from the Hearing Board.

T.M.

It was determined that ██████████████ as witness for the defense, could offer no information relating to plagiarism, and he was not called to testify.

When the proceedings were completed and Ms. Tshudy had made her final statement, the Honor Board adjourned for private deliberations to Room 124. These deliberations were not recorded.

## FACTUAL FINDINGS

During its private deliberations, the Hearing Board, on the basis of clear and persuasive evidence, made the following factual findings:

(a) The Honor Board determined that Ms. Tshudy had drawn upon and sometimes copied verbatim the Note published by Rogers in 2014 when preparing her assignment for Professor Gould in violation of the course instructions and of the Honor Code;

(b) In the view of the Hearing Board, Ms. Tshudy was at least disingenuous and at worst dishonest in explaining the similarities between the Rogers Note and her own paper.

## CONCLUSIONS AS TO THE HONOR CODE

The aforementioned factual findings were the basis for the Hearing Board unanimously concluding that Ms. Tshudy violated Article 2.1(F) of the Honor Code.

3

ANNOUNCING THE VERDICT

After the Hearing Board completed its private deliberations, the adjourned session of the Hearing Board was resumed to announce the verdict in the Hearing Room. Throughout the hearing Ms. Trudy refused to acknowledge intentional plagiarism and insisted that, at best, she had made an honest mistake in preparing her assignment.

IMPOSED SANCTIONS

The Hearing Board noted that it is not limited by the Honor Code, upon finding a violation, to those sanctions enumerated in Section 6.2 of the Code. Unanimously the Hearing Board concluded that in their view expulsion was not the appropriate sanction considering all the circumstances of the matter.

After due consideration, the Hearing Board unanimously imposes the following sanctions:

(1) A written reprimand to be included in the student's record;
(2) Denial of credit for the course "Biotech, Pharmaceuticals and the Law" with an appropriate transcript entry;
(3) The recommendation that Ms. Tshudy schedule a meeting with Associate Dean Jeffrey Dodge to discuss mental health assistance that may be available through the Law School or the University;
(4) The recommendation that Ms. Tshudy schedule a meeting with Professor Titichia Jackson to receive counseling on academic success.

The choice of sanctions was guided by Section 6.1 of the Honor Code.

*Section 6.1(A)*

Section 6.1(A) of the Honor Code suggests the Hearing Board should consider: "[t]he nature and seriousness of the violation, including the potential harm to the academic integrity of the law school community". Plagiarism is the theft of another's intellectual property. The course rules expressly cautioned against plagiarism in accordance with the highest ideals of the legal profession and the regulations of Pennsylvania State University as codified in the Honor Code. Ms. Tshudy's approach to her paper and her execution of the assignment were based on plagiarism from the outset. She failed on a massive scale to act with academic integrity.

*Section 6.1(C)*

Section 6.1(C) of the Honor Code recommends that the Hearing Board consider [t]he need to uphold and promote respect for the Honor Code and to deter further violations of the Accused Student and others". The Hearing Board did not consider expulsion to be the appropriate sanction in this case. It believed that a written reprimand with notation on the transcript and failing the course would be sufficient deterrence in this situation.

*Section 6.1(E)*

Section 6.1(E) suggests the Hearing Board should consider "[w]hether the student made a Conscientious Admission". That opportunity was rejected by Ms. Tshudy. She testified during the hearing that had she realized that plagiarism does not require *mens rea*, as she put it, she would have accepted the offer of a Conscientious Admission. The overall weight of her testimony was to avoid such an admission.

*Section 6.1(F)*

Section 6.1(F) of the Honor Code suggests an Hearing Board should consider "[t]he extent to which the Accused Student cooperated or was forthright during the investigation and/or Honor Proceeding". Ms. Tshudy declined to make a Conscientious Admission, was cooperative in providing materials on which her defense was based, was willing to produce witnesses for aspects of her case, and appeared at the hearing.

Her defense was based on the proposition that the similarities between her paper and the Rogers Note were all attributable to the general literature on the case she was researching, what she considered to be massive overlapping in the reports and analysis of the case, and a general common terminology and supportive language such that anyone writing about the case would unavoidably display great similarities of text.

The Hearing Board considered this, in light of the comparisons between the Tshudy paper and the Rogers Note, to be an unsustainable position. The Tshudy defense was not responsive to the accusation, and it was pursued to an extreme in light of the contrary findings. In the view of the Hearing Board, the defense was in the end a dishonest defense.

*Section 6.1(H)*

Section 6.1(H) of the Honor Code should consider "[w]hether the Accused Student gained, or acted with intent to gain, academic benefit". Ms. Tshudy submitted a plagiarized paper in order to earn credits towards graduation and professional qualification as an attorney. These benefits she sought to obtain through dishonesty, and the Hearing Board felt it appropriate to deny credit for the course and to impose a notation on her transcript accordingly.

*Summary*

The Hearing Board believes that the sanctions are appropriate under all the circumstances known to it in connection with this matter. Ms. Tshudy may experience some difficulty in become a licensed member of the legal profession, but this is not inappropriate in this situation.

# EXHIBIT C

February 4, 2022 (To be released on 2.7.2022)

Dear Ms. Trisha Tshudy,

I have considered the content of your appeal submission, dated January 24, 2022, and the relevant materials presented during the Honor Code Hearing.  Based on the record and pursuant to Section Seven of the Honor Code, I affirm the decision of the Honor Code Hearing Board as well as the sanctions imposed.  Pursuant to the Honor Code, I am not required to write an opinion when my decision affirms the decision of the Hearing Board.

Though I am not required to write an opinion, I have decided to respond with findings to four of the more flagrant assertions you made in your appeal based on my review of the recorded hearing that took place on Friday, January 14, 2022, which hearing extended for four hours, 32 minutes, and 14 seconds.  First, I find that Associate Dean Laura Williams did not convey misinformation to you about the charge of violating the plagiarism standard nor did she equivocate about the availability of a resolution in the form of a conscientious admission.

Second, I find that you were not "repeatedly interrupted" during your presentation at the hearing nor did Dean Williams and Professor Gould engage in "scoffing" or the "making [of] inappropriate sounds."  Moreover, I find that Dean Williams was answering questions she was asked by members of the Hearing Board; accordingly, I further find that Dean Williams did not—over "extended periods of time"—"start all over again to present her side of the case."

Third, I find that none of the presenters interrupted any other presenters; furthermore, the President of the Hearing Board ensured the proceedings were carried out with dignity and respect for all participants.  Fourth and finally, I find that your provocative assertions in the appeal--that Professor Gould committed "perjury," and that there was a "lack of civility and decorum, and absolute negligence on the part of the [Honor Code Administrator}"--were both unsubstantiated and fallacious.

DECISION:  I affirm the decision of the Honor Code Hearing Board as well as the sanctions imposed.  My decision is final and marks the completion of the Honor Code process.


Danielle M. Conway
Dean and Donald J. Farage Professor of Law
Penn State Dickinson Law

# EXHIBIT D

Trisha Tshudy                                    Appeal                                    January 24, 2022

Dear Dean Conway,

      I am writing you to officially appeal the decision of the Hearing Report based on a few crucial considerations. I am writing this amidst mourning the death of another very close family member because from what I have experienced, no extension would be granted especially since my appeal was greatly discouraged. I entered law school because I believed in the value of truth. I wrote in my admissions essay about my experience with a false accusation nearly costing my ████████████ his life and contemplated my decision while removing the rope from my barn's rafters. I hope to express to you the direct conflicts with policy and procedure I underwent as well as other circumstances for consideration. The reasoning behind my appeal is the misinformation and mistreatment by school staff, neglect of evidentiary policy, disregard of hearing procedure, and additional unjust and disingenuous actions that led to false findings by the hearing board. I am seeking at the very least, removal of the hearing sanctions from my permanent record.

      To begin, there were issues with misinformation shared by Dean Williams from the onset. I have nothing against Dean Williams although after this experience I truly have a hard time believing she had nothing against me. According to her, I had to decide whether I wanted to go to a hearing before even attempting to come to resolution. At the board hearing, they expressed a very different viewpoint giving me the impression that it should have been discussed further with the dean before jumping to the hearing. Additionally, the day I was to decide on whether to proceed with a hearing, I called Dean Williams to specifically ask if plagiarism was strict liability and I thought it incredibly odd that she definitely did not say yes and told me that if unless I wanted to admit that I plagiarized (using the definition I read aloud from the dictionary which includes intentional or knowingly), I would have to go to a hearing. I tried to explain that while I know for a fact that I did not knowingly or intentionally commit plagiarism, my neurological disability exacerbated by stress causes swelling and potential brain bleeds that causes memory loss, disorganization, variability in comprehension, etc. I will explain that in greater detail later. But I truly felt from this and additional aspects, that I was like a falsely accused criminal that was denied representation, because the only person I was able to discuss this with withheld information, gave me incorrect information, and circumvented procedure.

      Beyond the refusal to answer my direct question on strict liability and possibly the incorrect information provided about the opportunity to discuss resolution prior to hearing, the evidence I was also given to be presented at trial was also not administered to the board. Instead, the evidence was switched out with separate evidence that Dean Williams claims was simply "prettier." In actuality, the original evidence sent through a plagiarism program yielded a 21 % similarity in information between the papers much of which included names of Acts and such while the "prettier" version that was swapped out for this one was from a program called Turnitin that is research has shown leads to false positives and reflected a 59% similarity index because it included all the headnote quotes that I am sure the other author also used from comparable cases as well as highlighted all the common jargon, phrasing, names, acts, or even just words like "the" to claim they are plagiarized. While I prepared my statement using the evidence she said would be used at trial, I was not notified that there would be a bait and switch to attempt to convince the board from the onset that I am guilty to be proven innocent instead of innocent to be proven guilty.

      Beyond the misinformation provided in the beginning and the bait and switch of evidence in the accusation against me, I also experience complete negligence of the hearing procedure described to me.

Trisha Tshudy                                    Appeal                                    January 24, 2022

In the beginning of the hearing, I was told that they would first hear from Dean Willams and Professor Gould and then ask them questions, I would be granted to chance to cross as well. Afterwards they would rest that side and then hear from me and ask me questions. Then they would go to deliberations. Instead, I waited patiently for the them to produce their case against me, and then did my own testimony, but I couldn't tell where my testimony and questioning ended because I was repeatedly interrupted from presenting my case and communicating with the board by Dean Williams and Professor Gould scoffing and making inappropriate sounds (which I know that courtrooms often don't even allow making faces) and even extended periods of time where Dean Williams would start all over again to present her side of the case and go through the Turnitin report once again from start to finish. During my presentation, Professor Gould even interrupted after I mentioned to the board that I was so determined to be completely open and transparent that I attached the alleged plagiarized paper to my original outline since it was one, I was likely going to scavenge for biotech cases from but not actually read or take from the analysis. He falsely told the board during my time, that I attached 70 pages of random sources to my outline, when it was mostly just one 70-page source. It was like a court case where the defendant is not given representation and limited in opportunity to speak while the other side gets an unlimited number of redirects and can present their entire case over repeatedly without interruption or opportunity for me to object.

Even if we were to ignore the misinformation, manipulation of the evidence with the claim that "prettier" constitutes a 40 % difference with a well-recognized flawed program, and the complete lack of consistency in procedure, there was additionally perjury by the key witness Professor Gould, a lack of civility and decorum, and absolute negligence on the part of the prosecution who openly admitted that neither of them had even done a single comparison with other papers (even ones I provided them) or even to look up the things that they felt were original phrases which in one quick google search I revealed were phrases that had entire papers written about their use. I have never thought that accusations can be made with such little effort exerted on the part of the accusers and I honestly can say this was not a good representation of the law school. Professor Gould and Dean Williams admitted to not looking into comparable papers or even running the plagiarism software against anything else. Professor Gould directly contradicted his own emails and somehow forgot all of the conversations and meetings we had including the few questions I asked including specifically asking whether we should omit secondary sources that we never pulled anything directly from as seen in the sample paper he provided, or if we can include any sources we may have used to harvest applicable cases from their end credits (as taught in Legal Writing) to which he said no, just follow the sample. I am not a beat around the bush kind of person and so I ask these types of direct questions to ensure that I have all my basis covered to prevent such allegations, but if a professor is going to openly lie about such things, I believe the school should invest in recording professional conversations between students and professors to prevent this. I would also like to mention that Professor Gould even admitted that me taking a broader perspective of patent and trade secret law pertaining to methods, tests, processes, and procedures is an original take that would certainly have overlap of implementation of those basic standards.

I also brought a witness who was a friend of a friend, but more so an acquaintance who assisted me with IT and so was able to vouch for my collection and transfer of sources and quotes from cases as well as delays from cases. The board deemed it unnecessary to question him to verify any of the information I presented or provide additional information. I was told that my witness was for the board to question and not myself. Had the board still been on the fence, I would have thought procedure

Trisha Tshudy                                    Appeal                                    January 24, 2022

would have required them to ask questions of a witness who had taken off work to provide them with information instead of skip that step all together if they questioned any part of my testimony.

As mentioned earlier, I was not able to find any information or receive any assistance in understanding what is required for me to present regarding my disability. In the write up of the hearing, there was a claim that I was deceitful and deceptive. Absolutely the only time that I even stuttered on my response was instances that were blocked from my memory. Notations that I saw as my own writing and would have never known correlated to something else from another source. The uncertainty in the function ability of my brain and direct blocks in comprehension due to trauma and brain swelling are not something I am able to control. I am more than willing to take responsibility for an admit to any faults that I could control. But last semester was an extreme set of circumstances that overpowered my disciplines to maintain a working brain. Last semester I watched ███████████████████████ ████ die a painful death and then on the first time out since, underwent a freak accident that led me to peeling the parts of my dearest friend off the highway to reassemble for burial and then searching for his long-lost brother who also saved my life, I did not underestimate the effect this had on me particularly my brain. The PTSD from the event traumatized me into spending much of the semester living in a hammock and out of my vehicle. I was unable to eat or sleep, but I still worked to communicate as much as I could to professors and submit assignments. To properly perform in law school, I must maintain very strict rules for everything that affects my body including food, sleep, exercise, etc. I have developed strict discipline so that I have a functional brain which I can rely on. Being unable to do so, leads to gaps in my memory, although my memory that I retain are very clear. Therefore, no matter how certain I am of my abilities and integrity, I have learned after years of suffering to recognize ways that my disability can affect me and not have pride interrupt. My hesitation in saying for certain that I did not make a mistake in my source record keeping was based solely on my understanding of my neurological disability and my education that cerebral swelling degenerates my ability to perform.

Lastly, Dean Williams mentioned the fact that I did not ask for help or an incomplete. First, I did not know incompletes were allowed. Second, I did ask for help or guidance from the disabilities section during finals and they recommended just getting my paper in as soon as possible. Third, I sent the information to Professor Gould to explain the delay and submission and explained that I could provide any more information as needed since my illness was well documented for a late submission and this excused delay was still harnessed as evidence against me in the hearing. It should be reflected that I was at least prepared to submit a paper even if it was not that good of one by the due date but went through all the above steps after I contracted a horrific illness from being forced onto campus for finals (something I foresaw and mentioned as an extreme risk prior to it occurring). This meant that I spent a week of my 10-day finals window vomiting the life out of me and could barely look at a screen for long enough to take an exam so forget about siphoning through emails and additional decisions. Had I been given the time, known my disability would be directly tied to the questioning, and had the money to afford additional medical witness to attest to my disability and what it entails, I would have included that in a heartbeat. I am currently seeking assistance from Disability Rights Pennsylvania in case that is necessary in this instance. I truly cannot believe that the inability for me to clearly answer one of the hundreds of questions I was asked in complete detail because I simply do not fully trust my disabled brain's recollection and remember that being on my writing tablet means that an entire board would

find me so guilty of something I didn't do that they would also impose sanctions to ruin my entire future career as a lawyer (which is even specified in the writing).

In summation, there were procedural issues and biased application of policy or direct contradiction of policy to create an environment not to seek truth, but to compete to win. The lack of professionalism and an assumption of guilt without even considering contrary evidence is all part of why I am appealing this decision. Additionally, as mentioned, it is unclear about what aspects of my disability I needed to disclose in this situation so guidance from Disability Rights Pennsylvania will ensue. I beg you to look in depth into BOTH sides of this disagreement, but please disregard bias in your review. I would be more than happy to provide evidence for any of my statements as well as additional evidence for the case. As I told Dean Williams from the beginning, I support the process of review, I just hope that it will be investigated fully to reveal the truth instead of partially with decisions based on assumption. Thank you so much for your time.

With Much Appreciation,

Trisha Tshudy

# EXHIBIT E



**PennState**
Dickinson Law

**Danielle M. Conway**
Dean and Donald J. Farage Professor of Law
Dickinson Law
The Pennsylvania State University
Lewis Katz Hall
150 South College Street
Carlisle, PA 17013

717-240-5208
dzc5647@psu.edu
dickinsonlaw.psu.edu

February 16, 2022

Ms. Trisha Tshudy
762 Palmyra Bellegrove Road
Annville, PA  17003

Dear Ms. Tshudy:

When you were admitted to Penn State Dickinson Law, you were awarded a full-tuition scholarship. Your acceptance letter stated that your scholarship would be renewed provided that you remained in good standing under both the Academic Rules and the Honor Code. As well, Dickinson Law's policy regarding scholarship retention is stated on the Law School's website: https://dickinsonlaw.psu.edu/grants-and-scholarships.

As a result of your Honor Code violation, your scholarship will be revoked for the current semester and for the 2022-2023 academic year. Your balance due to the University for the current semester will be $26,688 in the absence of your scholarship credit. You will see this change reflected in your student account as soon as the Bursar's office processes your scholarship revocation. Should you need to borrow loans to cover this balance or any future balance in subsequent semesters, please contact Rebecca Schreiber, Director of Admissions & Financial Aid, at rms822@psu.edu. Please note that Dickinson Law will not retroactively revoke the scholarship that you received for the three prior semesters during which you were enrolled.

Sincerely,

Danielle M. Conway
Dean and Donald J. Farage Professor of Law

# EXHIBIT F

████████████

| | |
|---|---|
| **From:** | Conway, Danielle M <DanielleConwayDickinsonLaw@psu.edu> |
| **Sent:** | Tuesday, June 7, 2022 7:59 PM |
| **To:** | Tshudy, Trisha R |
| **Cc:** | Gaudion, Amy C.; Saidman-Krauss, Bekah Anna; Schreiber, Rebecca M; Orner, Doris Louise; Burd, Jessica Lynn |
| **Subject:** | RE: Notice of Revocation of Scholarship |

Dear Ms. Tshudy,

I have received the notes from the University Bursar about your calls to their office. I confirmed that you contacted Penn State University Bursar and Student Financial Services on April 6, 2022. The Bursar's Office confirmed that you communicated to them that your scholarship was "removed in error." I also confirmed that on April 27, 2022 the Bursar's Office instructed you to contact the Dickinson Law Financial Aid Office.

Again, I direct you to await the decision of the Affirmative Action Office. Until then, please refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship.

Warmest,
Dean Conway

**Danielle M. Conway**
Dean and Donald J. Farage Professor of Law
Dickinson Law
The Pennsylvania State University
127C Lewis Katz Hall
150 S. College Street
Carlisle, PA 17013
717-240-5208





---

**From:** Tshudy, Trisha R <trt5096@psu.edu>
**Sent:** Monday, June 6, 2022 9:16 PM
**To:** Conway, Danielle M <DanielleConwayDickinsonLaw@psu.edu>
**Cc:** Gaudion, Amy C. <acg14@psu.edu>; Saidman-Krauss, Bekah Anna <ras1075@psu.edu>; Schreiber, Rebecca M <rms822@psu.edu>; Orner, Doris Louise <dlo3@psu.edu>; Burd, Jessica Lynn <jlb5055@psu.edu>
**Subject:** Re: Notice of Revocation of Scholarship

Dear Dean Conway,
I am not asserting that I did not receive notice. Rather I contacted the offices originally to find all my options because a retroactive mid semester revocation is not an easy thing to financially adjust to and was done right before scheduling. The Penn State faculty was extremely helpful and eager to step in when I received no response from Penn State

Dickinson Law School. From such communication, I was informed that 1) Revocation can not be done retroactive mid semester and 2) that the attempted mid semester retroactive revocation MUST be an error not just for the afore mentioned reason but because policy was not followed and there was no signature and authorization with the revocation (they pulled up the specific details on my account to observe this). They said such a thing can not be done intentionally (as would designate faculty misconduct) and therefore must be a technical glitch or a technical issue where future semester eligibility should have been affected but not this semester. I took notes. So I did not assert it was a mistake. I did not come up with this and didn't expect/realize/predict that was the case. I was informed it had to be. Again I specifically asked if this could be correctly tied to the honor code claim, but they assured me that can only affect future semester eligibility (not mid semester) and again the lack of authorization and steps required meant it would have to be misconduct or a mistake. Granting the gracious benefit of the doubt, they were certain it had to be mistake. Please do not make false accusations. I am very careful not to misrepresent any information and have been upfront and honest through the entire process. I find it very disheartening that no one in the administration and faculty will converse with me on this matter or show any concern or desire for resolution or clarification on such an issue. Now knowing that you are at the very least, discouraging any faculty to provide a response is truly heart wrenching.
With Much Appreciation,
Trisha Tshudy

Get Outlook for iOS

---

**From:** Conway, Danielle M <DanielleConwayDickinsonLaw@psu.edu>
**Sent:** Monday, June 6, 2022 8:30:35 PM
**To:** Tshudy, Trisha R <trt5096@psu.edu>
**Cc:** Gaudion, Amy C. <acg14@psu.edu>; Saidman-Krauss, Bekah Anna <ras1075@psu.edu>; Schreiber, Rebecca M <rms822@psu.edu>; Orner, Doris Louise <dlo3@psu.edu>; Burd, Jessica Lynn <jlb5055@psu.edu>
**Subject:** FW: Notice of Revocation of Scholarship

Dear Ms. Tsudy,

I have been informed that you have reached out to the Bursar's Office at Penn State University and two offices at Dickinson Law—the Finance Office and the Admissions and Financial Aid Office—allegedly communicating to employees in these offices that there was an administrative error that resulted in the revocation of your scholarship.  With this email, I confirm that my email to you, dated February 16, 2022, expressly informed you that your scholarship was revoked.

You were also informed of your appeal rights.  Consistent with your appeal rights, I confirmed with the Affirmative Action Office that you have, in fact, lodged an appeal.  Accordingly, your appeal is evidence that you did receive notice that your scholarship was revoked.  The Affirmative Action Office will render a decision in due course.  Until then, please refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship.

Warmest,
Dean Conway

**Danielle M. Conway**
Dean and Donald J. Farage Professor of Law
Dickinson Law
The Pennsylvania State University
127C Lewis Katz Hall
150 S. College Street
Carlisle, PA 17013

717-240-5208



    

**From:** Conway, Danielle M
**Sent:** Wednesday, February 16, 2022 3:39 PM
**To:** Tshudy, Trisha R <trt5096@psu.edu>
**Cc:** Saidman-Krauss, Bekah Anna <ras1075@psu.edu>; Schreiber, Rebecca M <rms822@psu.edu>; Gaudion, Amy C. <acg14@psu.edu>
**Subject:** Notice of Revocation of Scholarship

Dear Ms. Tshudy,

Enclosed is a letter that provides notice of the Law School's policy regarding scholarship revocation for students who do not remain in good standing under the Academic Rules and the Honor Code. As a result of your Honor Code violation, your scholarship will be revoked for the current (spring) semester and for the 2022-2023 academic year. The Law School will not retroactively revoke the scholarship that you received for the three prior semesters. Please make sure to read the attached pdf document.

Sincerely
Dean Conway

**Danielle M. Conway**
Dean and Donald J. Farage Professor of Law
Dickinson Law
The Pennsylvania State University
127C Lewis Katz Hall
150 S. College Street
Carlisle, PA 17013
717-240-5208



